UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC WARREN,<br><br>   Plaintiff,<br><br>   v.<br><br>NKIRUKA NDU,<br><br>   Defendant. | Case No. 1:21-cv-00120-JLT-HBK (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANT'S EXHAUSTION BASED MOTION FOR SUMMARY JUDGMENT[1]<br><br>(Doc. No. 25)<br><br>14-DAY DEADLINE |

Pending before the Court is the Motion for Summary Judgment filed by Defendant Nkiruka Ndu on October 31, 2023. (Doc. No. 25, "MSJ"). Plaintiff filed an Opposition (Doc. No. 27), and Defendant filed a Reply (Doc. No. 28). The undersigned, finding no dispute of material fact, recommends Defendant's MSJ be granted.

**I. BACKGROUND**

**A. Summary of Plaintiff's Complaint**

Plaintiff Eric Warren ("Plaintiff" or "Warren"), a state prisoner, initiated this action by filing a pro se civil rights complaint pursuant to 42 U.S.C § 1983. (Doc. No. 1). Warren proceeds on his second amended complaint. (Doc. No. 13, "SAC"). The Court screened the SAC

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2023).

and found it stated a cognizable Eighth Amendment medical deliberate indifference claim concerning Defendant Ndu's alleged failure to prescribe Plaintiff orthotic boots to treat his severe foot pain. (Doc. No. 14 at 1-2).

According to the SAC, Defendant Ndu was Plaintiff's primary care physician for more than 16 months while Plaintiff was housed in F yard of Substance Abuse Treatment Facility and State Prison ("SATF") in Corcoran, CA. (Doc. No. 13). Plaintiff advised Defendant on multiple occasions of severe pain he was suffering because of bone spurs; Defendant also knew that Plaintiff had been prescribed orthotics boots since 2016 to treat his condition. (*Id*. at 8 ¶¶ 13-17). Nevertheless, Defendant refused to prescribe Plaintiff orthotic boots, resulting in Plaintiff continuing to suffer "excruciating pain." (*Id*. at 9-10 ¶¶ 19-32).

As relief, Plaintiff seeks an order directing CDCR to issue him orthotics boots, monetary damages to be determined at trial, and attorney's fees. (*Id*. at 12).

**B. Defendant's Exhaustion-Based Motion for Summary Judgment**

Defendant filed the instant exhaustion based MSJ on October 31, 2023. (Doc. No. 25). In support, Defendants submit a memorandum of points and authorities (Doc. No. 25-1); a statement of undisputed material facts (Doc. No. 25-3); and the Declaration of S. Gates (Doc. No. 25-4). Defendants contend the uncontroverted evidence proves Plaintiff did not properly and fully exhaust his available administrative grievances regarding his Eighth Amendment claim against Defendant Ndu. (*See generally* Doc. No. 25-1). More specifically, the first health care grievance Plaintiff submitted regarding his foot pain (SATF HC No. 19000939) ("Grievance 939"), while properly exhausted, was filed approximately one year before Defendant Ndu became Plaintiff's primary care physician and does not contain any allegations of misconduct involving Ndu. Thus, Grievance 939 did not exhaust Plaintiff's administrative remedies as to the claims alleged in this lawsuit. (*Id*. at 6). As to the second grievance Plaintiff filed concerning his foot pain (SATF HC No. 20000552) ("Grievance 552"), while it names Defendant Ndu, Plaintiff never properly appealed his claim to the headquarters level. Consequently, Plaintiff failed to exhaust his administrative remedies as to Defendant Ndu. (*Id*. at 6-7).

////

**C. Plaintiff's Opposition to Exhaustion-Based MSJ**

On November 22, 2023, Plaintiff filed an Opposition. (Doc. No. 27). In support, Plaintiff submits a memorandum of points and authorities, (*id*. at 2-3), a statement of disputed material facts, (*id*. at 5-6), a copy of a July 1, 2020 response from California Correctional Health Care Services ("CCHCS"), (*id*. at 8), and Plaintiff's Declaration (*id*. at 10-11).

Plaintiff acknowledges that his initial grievance did not name Defendant Ndu, however he contends that under *Reyes v. Smith*, 810 F.3d 654 (9th Cir. 2016), he provided sufficient information to exhaust his administrative remedies. (Doc. No. 27 at 2). As to Grievance 552, Plaintiff maintains that he submitted his appeal to all levels, and that the attached letter from CCHCS supports his assertion. (*Id*. at 3, 5).

However, for the reasons discussed below, Plaintiff's arguments are unavailing and fail to raise a genuine dispute of material fact as to whether he exhausted administrative remedies for either of his two health care grievances.

## II.   APPLICABLE LAW

**A. Summary Judgment Standard**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material where it is (1) relevant to an element of a claim or a defense under the substantive law and (2) would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247 (1987).

The party moving for summary judgment bears the initial burden of proving the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). When the moving party has met this burden, the nonmoving party must go beyond the pleadings and set forth specific facts by affidavits, deposition testimony, documents, or discovery responses, showing there is a genuine issue that must be resolved by trial. *See* Fed. R. Civ. P. 56(c)(1); *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021). A mere "scintilla of evidence" in support of the nonmoving party's position is insufficient. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Rather, the

evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party, to return a verdict in that party's favor. *Id.*

In an exhaustion-based summary judgment motion, the defendant bears the initial burden of establishing "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). If the defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* The ultimate burden of persuasion remains, however, with defendant. *Id.*

The Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. The omission to an argument, document, paper, or objection is not to be construed that the Court did not consider the argument, document, paper, or objection. Instead, the Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate for purposes of this Order.

**B. Exhaustion Under the PLRA**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life," including *Bivens* claims. *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). Exhaustion is a condition precedent to filing a civil rights claim. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

The PLRA recognizes no exception to the exhaustion requirement, and the court may not recognize a new exception, even in "special circumstances." *Ross v. Blake*, 578 U.S. 632, 648 (2016). The one significant qualifier is that "the remedies must indeed be 'available' to the prisoner." *Id.* at 639. A prison's internal grievance process controls whether the grievance satisfies the PLRA exhaustion requirement. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

An inmate must exhaust available remedies but is not required to exhaust unavailable

4

remedies. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Id.* (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 204. It is the defendant's burden to prove that there was an available administrative remedy, and that the prisoner failed to exhaust that remedy. *Albino*, 747 F.3d at 1172. "Once the defendant has carried that burden, the prisoner has the burden of production. That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. If the court concludes that the prisoner failed to exhaust available administrative remedies, the proper remedy is dismissal without prejudice. *See Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

**C. CDCR Health Care Grievance Procedures**

During the applicable time, CDCR's health grievance process involved a two-step procedure for addressing an inmate's health care concerns. *See* Cal. Code Regs. tit. 15, § 3999.225, et seq.; (*see also* Doc. No. 25-4 at 2-3 ¶¶ 6-7).

First, "[t]he grievant shall complete Section A of the CDCR 602 HC and submit to the HCGO [Health Care Grievance Office] where the grievant is housed within 30 calendar days of: (1) The action or decision being grieved, or; (2) Initial knowledge of the action or decision being grieved." Cal. Code Regs. tit. 15, § 3999.227(b); *see also id*., § 3999.225(n) (defining HCGO). "The grievant shall document clearly and coherently all information known and available to him or her regarding the issue … includ[ing] any involved staff member's last name, first initial, title or position, and the date(s) and description of their involvement. If the grievant does not have information to identify involved staff member(s), the grievant shall provide any other available

5

information that may assist in processing the health care grievance." *Id.*, § 3999.227(g); *see also, e.g., Robinson v. Cryer*, 2023 WL 3007344, at *6–7 (E.D. Cal. Apr. 19, 2023), report and recommendation adopted, 2023 WL 3625266 (E.D. Cal. May 24, 2023) (finding medical grievance that did not identify certain defendants did not exhaust plaintiff's administrative remedies with respect to those defendants).

Second, "[i]f dissatisfied with the institutional level health care grievance disposition, the grievant may appeal the disposition … to HCCAB [Health Care Correspondence and Appeals Branch] … within 30 calendar days plus five calendar days for mailing . . .." Cal. Code Regs. tit. 15, § 3999.229(a); *see also id.*, § 3999.225(l) (defining HCCAB). "The headquarters' level review constitutes the final disposition on a health care grievance and exhausts administrative remedies . . .." *Id.*, § 3999.230(h), *see also id*. § 3999.226(g) ("Health care grievances are subject to a headquarters' level disposition before administrative remedies are deemed exhausted pursuant to section 3999.230. *A health care grievance or health care grievance appeal rejection or withdrawal does not exhaust administrative remedies*.") (emphasis added).

## ANALYSIS

**A. Material Facts Regarding Exhaustion of Administrative Remedies**

Following a thorough review of the evidence submitted, the Court finds these material facts are deemed undisputed, unless otherwise indicated:

- During the events giving rise to this action, Plaintiff Warren was incarcerated at Substance Abuse Treatment Facility and State Prison ("SATF"). (Doc. No. 25-3 at 1 ¶ 1); (Doc. No. 27 at 2).

- On or around June 21, 2019, Plaintiff submitted Health Care Grievance No. 19000939 ("Grievance 939") complaining that Doctor E. Griffith rescinded a medically necessary prescription for orthopedic shoes, which caused Plaintiff to endure foot pain, and requesting he be reissued orthopedic shoes. (Doc No. 25-3 at 1-2 ¶ 2); (Doc. No. 27 at 2).

- Grievance 939 does not mention Dr. Ndu nor provide any other information that could indicate her involvement in Plaintiff's treatment. (Doc. No. 25-3 at 2 ¶ 3); (Doc. No.

27 at 2).

- Defendant Ndu became Plaintiff's primary care provider around July 2020. (Doc. No. 13 at 9 ¶ 22) ("Defendant Ndu has been Plaintiff's PCP for approximately 16 months . . ."). She was therefore not Plaintiff's primary care physician until roughly a year after he filed Grievance 939. (Doc No. 25-3 at 1-2 ¶ 2); (Doc. No. 27 at 2).

- California Correctional Health Care Services ("CCHCS") conducted an institutional level review of Grievance 939 and declined to provide an intervention. (Doc. No. 25-3 at 2 ¶ 4); (Doc. No. 27 at 2).

- On September 15, 2019, Plaintiff appealed Grievance 939 to the headquarters' level, which also declined to provide an intervention. (Doc. No. 25-3 at 2 ¶ 5); (Doc. No. 27 at 2).

- On or around April 12, 2020, Plaintiff initiated grievance log no. SATF HC 20000552 ("Grievance 552") in which he again complained of his foot condition and requested orthotics. (Doc. No. 25-3 at 2 ¶ 6); (Doc. No. 27 at 2).

- Grievance 552 specifically mentioned Defendant Ndu and Plaintiff's intention to sue if he was not provided orthotics. (Doc. No. 25-4 at 25)

- On June 15, 2020, CCHCS issued an institutional level response for Grievance 552 declining to provide an intervention. The response informed Plaintiff,

    > You have the right to exhaust your administrative remedies or file a civil action…. The [PLRA] states: "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." … If you are dissatisfied with the Institutional Level Response, follow the instructions on the CDCR 602 HC, Health Care Grievance, and submit the entire health care grievance package for **headquarters' level review**. The headquarters' level review constitutes the final disposition of your health care grievance and exhausts your administrative remedies. (emphasis added).

- On or around June 28, 2020, Plaintiff completed the appeal section (Section C) of the grievance form and re-submitted it to the Institutional Level rather than submitting it to the Health Care Correspondence and Appeals Branch, as directed by the CDCR 602

7

HC form.  (Doc. No. 25-1 at 3); (Doc. No. 28 at 3-4).  Plaintiff, meanwhile, asserts that he "submitted [Grievance 552] to all 'available' levels" (Doc. No. 27 at 3), and specifically that he "submitted grievance to headquarters . . ." (Doc. No. 27 at 10).

- Plaintiff received a Notice from the CSATF Health Care Grievances Office addressed to Eric Wallace (V11367) dated July 1, 2020, stating that his "grievance is being returned to you for the following reasons" followed by the text of Cal Code Regs. tit. 15 § 3999.29 "Preparation and Submittal of a Health Care Grievance Appeal" with subsection (a) highlighted in bold text. (*Id*. at 8).  The July 1, 2020 letter further provided the address for the Health Care Correspondence and Appeal Branch. (*Id*.).

- No appeal of Grievance 552 was received at the headquarters level. (Doc. No. 25-4 at 4).

**B. Grievance 939 Did Not Exhaust Plaintiff's Administrative Remedies as to Defendant Ndu**

It is uncontested that Plaintiff's initial grievance regarding his foot pain and request for orthotics, filed on or about June 21, 2019, does not name Defendant Ndu and was submitted prior to her becoming his primary care provider.  (*See* Doc. No. 25 at 30).  Instead, the grievance states, "Dr. E. Griffith wrongfully rescinded a medically-necessary chrono for orthopedic shoes . . . This rescission is causing [Plaintiff] to endure foot pain." (*Id*.).  Indeed, based on Plaintiff's Second Amended Complaint, Defendant Ndu did not become his primary care provider until approximately July 2020, roughly a year after Plaintiff filed Grievance 939.

In certain circumstances, a Plaintiff's failure to name an individual in a grievance may not be fatal.  For example, in *Reyes v. Smith*, plaintiff filed a health care grievance regarding his institution's gradual termination of his access to morphine for pain management.  810 F.3d 654 (9th Cir. 2016).  The institution denied Plaintiff's grievance and appeals and noted in its responses that the prison's Pain Management Committee ("PMC") had "recommended against narcotics." *Id*. at 656.  After Plaintiff filed suit against two members of the prison's PMC and other prison officials, the district court granted an exhaustion-based motion for summary judgment as to the two PMC members because they had never been named in Plaintiff's health

8

care grievances, contrary to Cal. Code Regs. tit. 15 § 3084.2(a) (2015). *Id*. at 656-57. The Ninth Circuit reversed, noting the explicit reference to the PMC in the institution's responses in finding that Plaintiff's grievance "plainly put prison officials on notice of the nature of the wrong alleged in his federal suit—denial of pain medication by the defendant doctors [because] [p]rison officials . . . plainly knew that the Pain Management Committee, of which Drs. Smith and Heatley and Smith were members, had decided Reyes should not receive the medication . . ." *Reyes*, 810 F.3d at 659. Thus, even though Reyes had not named the specific defendants in his grievance and appeals, the Court found that the prison and those defendants were on notice of the nature of Reyes' claims. The Court also held that where the prison did not enforce a procedural rule, such as the requirement of naming all involved individuals, but instead addressed a grievance on the merits, it could not later enforce that rule so long as it was on notice of the claim. *Id*. at 658.

Here, Plaintiff cannot credibly argue that Grievance 939 put prison officials or Defendant Ndu on notice of any claims he might bring against Defendant Ndu. The PLRA requires "proper exhaustion," which "demands compliance with a prison's deadlines and other critical procedural rules." *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 742 (9th Cir. 2021). And, at a minimum, inmates are required to provide notice of the wrongdoing at issue to "put prison officials on notice of [their] complaint." *Morton v. Hall*, 599 F.3d 942, 946 (9th Cir. 2010). That means Plaintiff was required to identify Dr. Ndu as a party responsible for the alleged wrongdoing or otherwise notify prison officials that he took issue with care that could be attributed to her. *See, e.g.*, Cal. Code Regs. tit. 15, § 3084.2(a)(3) (2019) (requiring inmates to "list all staff member(s) involved and describe their involvement in the issue"); Cal. Code Regs. tit. 15, § 3482(c)(2) (same). Plaintiff did neither.

Instead, Grievance 939 explicitly and exclusively attributed the failure to treat his foot pain to "Dr. E. Griffith" and offers no clue that another provider, even if unnamed, was likewise responsible for inadequate medical care. (Doc. No. 25-4 at 10). Given that, by Plaintiff's own admission, Defendant Ndu was not his PCP until June or July 2020, nearly a year after he filed Grievance 939, it is not plausible that the allegations in the grievance pertain to her. Nor did the institution's responses to his grievance reflect that the institution or Defendant Ndu was on notice

9

1  that Grievance 939 concerned any care she provided to Plaintiff; the responses are devoid of any
2  mention of Defendant Ndu or care that could be attributed to her.  Accordingly, the Court finds
3  Health Care Grievance No. 939 has no bearing on Plaintiff's claim against Defendant Ndu and
4  cannot be construed to have exhausted his claims against Defendant Ndu.

**C. Plaintiff Failed to Fully Exhaust Health Care Grievance No. 552**

As to Plaintiff's second health care grievance regarding his need for orthotic boots, while it specifically references Defendant Ndu, there is no genuine dispute of material fact that Plaintiff did not fully exhaust the grievance at the headquarters level.

On June 15, 2020, California Correctional Health Care Services issued the institutional level response declining intervention, and instructed Plaintiff, "if [he is] dissatisfied with the Institutional Level Response, [to] follow the instructions on the CDCR 602 HC, Health Care Grievance, and submit the entire health care grievance package for headquarters' level review." (Doc. No. 25-4 at 22).  The parties differ in their account of what happened next.

Plaintiff asserts that he "submitted [Grievance 552] to all 'available' levels." (Doc. No. 27 at 3).  Plaintiff also states in his FAC, "[o]n 6/28/2020, the Appeal was submitted for Headquarters (HQ)-Level Review.  On 7/01/2020, the Appeal was screened out for a laundry list of reasons, none of which rightfully applied.  It appeared that the main reason was for allegedly not submitting the Appeal to the (HQ)-Level within (30-days), which was incorrect." (Doc. No. 10 at 2).

Defendant meanwhile asserts that the Health Care Correspondence and Appeals Branch did not receive any appeal of Grievance 552, and that Plaintiff resubmitted his appeal to the institutional level rather than to the headquarters level. (Doc. No. 25-1 at 3).  The letter from the CSATF Health Care Grievances Office ("HCGO") dated July 1, 2020, attached to Plaintiff's Opposition, evidences that this is what occurred.[2]  The fact that HCGO responded to Plaintiff's appeal reflects that Plaintiff mistakenly did in fact resubmit the appeal to the institutional level, rather than to HCCAB as required by prison regulations.  Moreover, Plaintiff does not dispute

---

[2] While the letter mistakenly identifies the addressee as Eric Wallace, rather than Eric Warren, the SAC does not assert that this error in any way affected Plaintiff's interpretation of the letter or his understanding of how to respond. (See *generally* Doc. No. 27).

10

1  that he failed to follow up on the July 1, 2020 letter and properly resubmit his appeal to the
2  headquarters level as instructed by the HCGO letter.

3        The July 1, 2020 letter is most plausibly construed as an appeal rejection, and as noted
4  above, under Title 15, "[h]ealth care grievances are subject to a headquarters' level disposition
5  before administrative remedies are deemed exhausted pursuant to section 3999.230. *A health*
6  *care grievance or health care grievance appeal rejection or withdrawal does not exhaust*
7  *administrative remedies*." Cal. Code Regs. tit. 15 § 3999.226(g).   Because a health care
8  grievance appeal rejection, such as the July 1, 2020 letter, does not exhaust administrative
9  remedies, Plaintiff cannot maintain that the HCGO letter exhausted his administrative remedies.

10        Plaintiff had 30 days, plus 5 days for mailing, from the time that he received the
11  institutional level denial of his grievance on June 15, 2020, i.e., until July 20, 2020, to properly
12  submit an appeal. (*See* Doc. No. 25-4 at 23).  Plaintiff has not carried his burden of proving that
13  he did so, and the undisputed record indicates that he did not.  Thus, there is no genuine dispute
14  of material fact that Plaintiff failed to properly exhaust Grievance No. 552.

15        The Court finds the undisputed record demonstrates that Grievance No. 939 was no
16  applicable to Defendant Ndu and Plaintiff failed to properly appeal the institutional denial of
17  Grievance No. 552 to headquarters at HCCCAB.  Because Plaintiff failed to fully exhaust his
18  administrative remedies as required by 42 U.S.C. § 1997e(a), Defendant is entitled to summary
19  judgment as a matter of law.

20        Accordingly, for the reasons set forth above, it is **RECOMMENDED**:

21        Defendant Ndu's motion for summary judgment (Doc. No. 25) be GRANTED, judgment
22  be entered in his favor, and the case closed.

23  **NOTICE TO PARTIES**

24        These findings and recommendations will be submitted to the United States district judge
25  assigned to the case, pursuant to the provisions of  28 U.S.C. § 636(b)(1).  Within fourteen (14)
26  days after being served with these findings and recommendations, a party may file written
27  objections.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate
28  Judge's Findings and Recommendations."  Parties are advised that failure to file objections within

1  the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d
2  834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   February 13, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE